FILED

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

ASPEN UNIVERSITY, INC.

    Plaintiff,

       v.

WARREN NATIONAL UNIVERSITY, LLC,

VANTAGE MEDIA CORPORATION,
and
AN UNKNOWN AGENT/CO-DEFENDANT

    Defendants.

2007 APR 17 P 3: 00

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

C.A. No. 1:07CV379 -CMH/TRJ

## COMPLAINT

Plaintiff, Aspen University, Inc ("Aspen"), by counsel, as and for its complaint against defendants Warren National University, LLC ("Warren National"), Vantage Media Corporation ("Vantage Media") and an additional unknown agent or agents, alleges the following.

## NATURE OF CASE

1.      This is an action for trademark and trade name infringement and related business tort causes of action arising from Warren National and its agents using Aspen's registered trademark and trade name without Aspen's permission, in purchased advertising from Google for use in Google's very popular Internet search engine.

2.      Google utilizes the practice of selling search terms or "key words" to advertisers on Google's Web sites located at www.google.com (Google) without restriction as to third party trademarks and trade names.

3.      Aspen's trademark and trade name are unique, inherently distinctive and well known within its field of business of online post-secondary educational institutions.

4.      The plaintiff and all of the defendants are "online companies," that is, they obtain and serve most of their customers through Internet transactions.

5.      Google operates an Internet "search engine," which is used by consumers to search the World Wide Web for, among other things, Web sites offering products and

services.

6.      While purporting to provide consumers with the objective results of such Internet searches, Google in fact generates advertising revenues for itself by marketing and selling to advertisers the ability to have their own listings appear alongside or among the results of searches based on terms of the advertiser's choosing -- including terms that are the registered trademarks and known trade names of other companies.

7.      Google purports to sell the right to use nationally registered trademarks and established trade names to third party advertisers who have no connection to trademark holders or the trade name business owners, in order that these third party advertisers can use other's trademarks and trade names to direct Internet users to their own third party web sites. Google has publicly stated, and Google advertisers are on notice, that such advertising may be construed as trademark infringement.

8.      Consumers using the Aspen trademark or trade name as search terms or "keywords" on Google's Web site are directed to search results and "Sponsored Links" of other companies. In some cases those results incorporate the Aspen mark or name into the boldly displayed title of the search result or into the body of the result.

9.      This use is occurring without Aspen's consent or authorization, and is causing confusion among consumers who seek to use Google's search engine in order to contact Aspen and obtain information about Aspen and its educational programs and services.

10.     Warren National is an online educational institution that provides it educational services through the Internet and who advertises heavily on and obtains students primarily through the Internet. Upon information and belief, Warren National pays Google to participate in Google's Internet advertising programs.

11.     Vantage Media is an Internet services company that operates an Internet based college search program found on the Internet at www.college.us.com and, upon plaintiff's information and belief, is an advertising agent creating and placing online advertising for its clients. Upon plaintiff's further information and belief, Warren National has hired Vantage Media to create and place Internet advertising using, among other things, Google's Internet advertising programs and Vantage Media's own college.us.com Web site.

12.     Upon information and belief, Warren National pays one or more additional unknown agents to place advertising on the Internet operating through their own Web sites

and/or through the Google Web site.

13.     As a result of Defendants' advertising efforts that incorporate the use of the Aspen trademark and trade name, consumers using those items as search terms or keywords on Google's search engines are likely to be confused as to whether the "Sponsored Links" paid for by advertisers have some connection, affiliation or association with Aspen. Furthermore, when consumers click on the "Sponsored Links" seeking information about Aspen's educational programs, they are likely to be deceived into believing that they will be provided with accurate information about Aspen's courses and programs. In fact, such links often provide no information about Aspen. Absent Defendants' infringing use of the Aspen's trademark and trade name, Google users employing the Aspen trademark or trade name as search terms would not be misdirected to the links and Web site of defendant Warren National.

14.     Individually and collectively each defendant's unauthorized use of the Aspen trademark and trade name generates profits for themselves that are directly attributable to their illegal exploitation of the value and name recognition associated with Aspen's trademark and trade name.

15.     By this lawsuit, Aspen seeks to enjoin further unauthorized use of the Aspen trademark and its trade name by any and all defendants and to recover actual damages, exemplary damages and its costs and reasonable attorneys' fees as permitted by federal and Colorado law.

## PARTIES

16.     Plaintiff Aspen University, Inc. is a Delaware corporation with its principal place of business located at 501 South Cherry Street, Suite 350, Denver, Colorado 80246. Aspen is authorized and licensed by The Colorado Commission on Higher Education to operate in Colorado as a private university under the Degree Authorization Act and to offer and provide educational degree programs and other educational services to Colorado citizens. By reciprocity, this educational license is recognized by every state.   Aspen is privately owned and provides post-secondary bachelor and graduate level education.

17.     The Distance Education and Training Council ("DETC") has accredited Aspen University and its degree programs.  This accreditation is recognized by the U.S. Department of Education and by every state in this country.   Aspen is also a recognized member of the

Council for Higher Education Accreditation ("CHEA") and a member of The American Council on Education ("ACE"). Aspen University grew out of an organization that began over 40 years ago as one of the first in the world to offer education and instruction in information systems, technology, and management. Aspen now offers programs in information and technology management, information systems, business, project management, criminal justice and nursing.

18.    Plaintiff is informed and believes, and on the basis of such information and belief alleges that defendant Warren National University, LLC now is, and at all times relevant hereto, a limited liability company organized and existing under the laws of the State of Wyoming. It maintains one office in Wyoming but its principle place of business is at 30301 Agoura Road, Agoura Hills, California 91301. Warren National has a business license from the state of Wyoming to operate an educational institution.

19.    Warren National is not accredited by any educational accreditation agency and it is legally prohibited from offering degree courses of study in three states and its diplomas are not recognized in several others. Through its predecessor Kennedy-Western University and now as Warren University, it has engaged in the business of offering "online" post secondary education services for some undetermined period of time believed by the Plaintiff to be about 15 years.

20.    Aspen is informed and believes, and on the basis of such information and belief alleges that defendant Vantage Media Corporation now is, and at all times relevant hereto, was a corporation organized and existing under the laws of the State of California with its principal place of business at 1350 Abbot Kinney Boulevard, Suite 203, Venice, California 90291.

21.    Vantage Media is an Internet services company providing a variety of services to Warren National including, upon plaintiff's best information and belief, operating Internet advertising and recruiting programs including the creating and placing of Internet ads and hosting web sites.

22.    Counsel for defendant Warren National stated in correspondence to this counsel that Warren National utilized at least one unnamed agent in placing internet advertising and therefore, based upon plaintiff's belief and limited information, at least one unnamed co-defendant is made a party to this Complaint with the expectation that the identity

4

of party will be discovered and then included by name in this Complaint.

## JURISDICTION AND VENUE

23.    This is an action arising under the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a), and 1125(c) and state law for the State of Colorado.

24.    This Court has federal question jurisdiction over the Lanham Act claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).

25.    The Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) and the doctrine of supplemental jurisdiction.

26.    This court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332 as the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and the citizenship of the parties is diverse.

27.    Aspen actively conducts business in the Commonwealth of Virginia and in this District in particular by actively advertising and offering educational services to residents of this area and by employing consultants in this District to promote its programs, especially with respect to its bachelor's degree in criminal justice.

28.    Defendant Warren National is subject to the personal jurisdiction of this Court because, among other things, it advertises, solicits clients, and conducts substantial amounts of business in the Commonwealth of Virginia and within this District in particular. Furthermore, significant harm to Aspen occurs due to the activity Warren National undertakes in this District.

29.    Upon plaintiff's information and belief, plaintiff alleges defendant Vantage Media is subject to the personal jurisdiction of this Court because, among other things, it has purposefully availed itself of the benefits of doing business in Commonwealth of Virginia by providing services to the residents of Commonwealth of Virginia, and by selling products and services to businesses and individuals located in Commonwealth of Virginia. Furthermore, significant harm occurs to Aspen due to the unlawful activity Vantage Media undertakes in this District.

30.    Virginia's long-arm statutes, Va. Code § 8.01-328.1 and Va. Code § 8.01-330, further supports the exercise of personal jurisdiction over the Defendants.

31.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because a significant part of the events giving rise to the claims occurred in this District and because

Defendants are residents of this District by virtue of the fact that they are corporations subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND
### The Internet And The World Wide Web

32.    The Internet is a global network of millions of interconnected computers. The World Wide Web is a portion of the Internet especially suited to displaying images and sound, in addition to text. Much of the information on the World Wide Web is stored in the form of Web pages, which can be accessed through a computer connected to the Internet (available through commercial Internet service providers or "ISPs"), and viewed using a computer program called a "browser," such as Microsoft Internet Explorer or Netscape Navigator. "Web sites" are locations on the World Wide Web containing a collection of Web pages. A Web site is identified by its own unique Uniform Resource Locator ("URL") or "Web address" (e.g. www.Aspen.edu), which ordinarily incorporates its site's "domain name" (e.g., Aspen.edu).

### ASPEN UNIVERSITY, INC.

33.    Aspen, including predecessor entities, began doing business in the 1960s being one of the very first institutions to recognize the need and then to offer education and training in the newly developing field of information technology.  Initially offering its educational and training services to businesses for the training of employees, Aspen expanded its operations and now provides training services to businesses and nationally accredited bachelors and masters degree programs and diplomas.

34.    Aspen continues to be in vanguard of technology utilization and provides the vast majority of its services "online" through courses and programs.  Online instruction provides student access to the educational programs 24 hours per day, every day of the year, enabling students to work and learn on their schedule.

35.    To enhance its trademark rights, ASPEN has obtained federal trademark registration for an inherently distinctive mark incorporating the stylized initials "AU" and the name "Aspen University."  This mark is incontestable.

36.    The Aspen trademark has no meaning outside of its use by Aspen in the course of its business operations and in its advertising to distinguish its products and services.

37.    The Aspen University trade name has no meaning outside of its use by Aspen in the course of its business operations and in its advertising to establish the company identity,

reputation and goodwill.

38.     Aspen invests a significant portion of its operating budget each year in national advertising and student recruiting. Aspen primarily advertises its products and services on the Internet, via its Web site at www.Aspen.edu but also advertises through other media and retains consultants for specific degree programs who operate throughout the country including in this judicial district.

## Google Inc.s' Search Engine Business and AdWords Program

39.     Internet customers who are searching for a specific company product or information, but who do not know the exact domain name or Web site address at which it may be found, may use Google's "search engines" to locate Web sites which match the search terms sought by the customer. A search engine, such as Google, checks the search terms against its databases and produces a search results page, which lists the Web sites that match the customer's search terms.

40.     Google's search engine is publicly reported to be the single most widely used search engine on the Internet.

41.     Google's search engine is available, among other places, through its Web site located at www.google.com. It also provides its search engine to popular Web sites such as www.cnn.com and www.washingtonpost.com.

42.     Google offers its business customers a search term-triggered advertising program called "AdWords." Google's AdWords program enables advertisers to purchase or bid on search terms that generate an advertising link (known as a "Sponsored Link") to the purchaser's Web site. Thus, for example, a consumer entering a search on the Google Web site on the term "baseball" is provided an advertisement from a Web site discussing baseball history, www.walteromalley.com. On information and belief, the sponsor of the advertisement for that particular Web site pays Google to have the ad appear at a particular location within the search results and pays an additional fee each time a consumer clicks on that advertisement and the associated Web site link.

43.     Google posts the "Sponsored Links" on the top of and at the margins of the first page and then on subsequent pages of the search engine results, based on the particular keywords used by the searcher using Google's Internet search engine and the fee amount paid. Google's advertisers select the search terms that trigger their advertisements.

44.    Upon information and belief, Aspen alleges that Google has entered into a contractual arrangement with other publicly available but lesser known internet search engines providing for advertisements purchased from Google to also appear on other search engine Web sites and search results.

45.    Google has publicly stated that its sale of the use of third party trademarks and trade names may expose itself to claims for infringement of intellectual property rights.  (See Google's Form S-1 Registration Statement filed with Securities and Exchange Commission, April 29, 2004 ("Google S-1"), p. 10.)[1]

46.    Plaintiff is informed and believes, and on the basis of such information and belief, alleges that Google has specifically informed advertisers of their risk of infringing on third party intellectual property rights by using third party trademarks and trade names in Google's AdWords Program.

**Defendants' Unauthorized Use Of The Aspen Trademark and Trade Name**

47.    On information and belief, Google has sold many search terms to each of these defendants have purchased from Google the use of search terms comprised, in whole or in part, of the Aspen trademark or trade name.

48.    The advertisements resulting from searches on Google's search engines include hyperlinks (or "links") that, when clicked on by a consumer, bring up the advertisers' Web site on that consumer's computer screen. Two such advertisements resulting from search in Aspen University are the ads for Warren National and college.us.com.

49. Consumers who are presented with these defendants' advertisements are not aware that they have no affiliation with Aspen and are not an authorized provider of Aspen's educational programs and services. Both Warren National and the Vantage Media Web site at college.us.com provide educational programs or leads to educational programs that compete with Aspen but never include any information or links to Aspen.

50.    Upon information and belief, all consumers entering "Aspen University" into Google's search engine who then visit the defendants' Web sites are diverted away from

---

[1] Under our new policy, we no longer disable ads due to selection by our advertisers of trademarks as keyword triggers for the ads.  As a result of this change in policy, we may be subject to more trademark infringement lawsuits...Adverse results in these lawsuits may result in, or even compel, a change in this practice which could result in a loss of revenue for us, which could harm our business.

Aspen, may not ever navigate to Aspen's Web site, and upon visiting those third party Web sites, choose to do business with Aspen's competitors rather than Aspen.

51.      Accordingly, as a result of intentional use of the Aspen's trademark and/or trade name by the defendants in their advertising program purchased from Google, consumers who specifically intend and desire to find Aspen's products and services are diverted to the defendants' Web sites and the defendants are unaffiliated with Aspen, are not authorized to use the Aspen's trademark or trade name and through which the consumer can never obtain any information about Aspen.

52.      Through this practice, defendants Warren National and Vantage Media intentionally used the Aspen trademark and trade name in commerce. This practice of intentionally purchasing and using Aspen's trademark and trade name in Google AdWords advertising program began after the Aspen trademark was registered and used by Aspen in commerce along with its trade name, and with full knowledge of Aspen's rights in its trademark and trade name.

## FIRST CAUSE OF ACTION
### Lanham Act — Trademark Infringement

53.      Aspen hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 52 above.

54.      The defendants' unauthorized and willful use of Aspen's registered trademark in connection with their Internet-based advertising constitutes use in commerce which infringes Aspen's exclusive rights in its federally-registered trademark is likely to cause confusion, mistake or deception as to the source of the services being offered. Such actions are likely to cause confusion as to whether Aspen is sponsoring, has authorized or is somehow affiliated with the products or services advertised on Google's search engine using Aspen's trademark and trade name.

55.      Consumers are likely to be initially confused into believing that clicking on Google's "Sponsored Links" will lead to Aspen's Web site or to information about Aspen's educational programs and services.

56.      Even after accessing the Web sites associated with "Sponsored Links" consumers are likely to be confused into believing that those Web sites and the information

9

they contain are associated with, sponsored by or otherwise affiliated with or connected to Aspen.

57.    Defendants' unauthorized and willful use of Aspen's registered trademarks in connection with their search-based advertising programs constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

58.    Defendants' infringement of the Aspen trademark is willful and reflects the intent of Warren National and Vantage Media to trade on the accredited academic standing of the degree programs associated with the Aspen trademark.

59.    The defendants' infringement has damaged Aspen in an amount to be determined at trial but that will be several times over the $75,000 required to establish diversity jurisdiction.

60.    The defendants' infringement has caused and, unless restrained by this Court, will continue to cause Aspen irreparable injury.

61.    Aspen has no adequate remedy at law for Defendants' infringement.

## SECOND CAUSE OF ACTION
### Lanham Act - Contributory Trademark Infringement

62.    Aspen hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 61 above.

63.    With full knowledge of Aspen's rights in the Aspen trademark, Warren National has authorized and engaged Vantage Media to purchase advertising for Warren National using Google's search-based advertising programs. Vantage Media has in fact purchased participation in Google's advertising program utilizing Aspen's trademark.

64.    The use of the Aspen trademark on Google's search engine to trigger advertisements for Warren National is likely to cause confusion, mistake and deception among Google users as to whether Aspen is the source of, or is sponsoring or affiliated with, the educational programs and services offered by Warren National.

65.    By engaging Vantage Media to purchase Internet advertising without restricting the use of the Aspen trademark, Warren National has provided aid and material contribution to Vantage Media's violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

66.     Warren National is therefore contributorily liable for the infringing use of the Aspen trademark by Vantage Media who used the Aspen trademark in purchasing advertisements in Google's AdWords program.

67.     Warren National's contributory infringement is willful and reflects its intent to trade on the good will and brand recognition associated with the Aspen trademark.

68.     Aspen has been damaged by Warren National's contributory infringement in an amount to be determined at trial.

69.     Aspen has no adequate remedy at law for the foregoing wrongful conduct.

70.     Aspen has been, and absent injunctive relief will continue to be, irreparably harmed by Warren National's actions.

## THIRD CLAIM FOR RELIEF
### Lanham Act – Vicarious Trademark Infringement

71.     Aspen hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 70 above.

72.     Warren National has the right and ability to control any all advertisements placed by its agents in any media.  Warren National engaged Vantage Media to create and place advertising for Warren National on the Internet through Google's AdWords Program and through Vantage Media's www.college.us.com Web site, which in fact Vantage Media has done.

73.     The use of the Aspen trademark in the context of the Google's search-based advertising program and the www.college.us.com Web site are likely to cause confusion among consumers, and constitutes infringement of Aspen's rights in the Aspen trademark.

74.     Warren National receives a direct financial benefit from Vantage Media's infringing use of the Aspen trademark.

75.     Warren National is vicariously liable for the infringing use of the Aspen trademark by Vantage Media.

76.     Aspen has been damaged by Warren National's vicarious infringement in an amount to be determined at trial.

77.     Aspen has no adequate remedy at law for the foregoing wrongful conduct.

## FOURTH CAUSE OF ACTION
### Lanham Act – False Representation

78.     Aspen hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 77 above.

79.     The defendants' use of the Aspen trademark on and in connection with Internet search-based advertising programs conveys the misleading commercial impression to the public that the advertisers listed in the manipulated search results pages, or their products, are approved by, sponsored by or are somehow affiliated or connected with Aspen.

80.     The defendants' misleading use of the Aspen trademark on and in connection with their Internet search-based advertising programs constitutes a false designation of origin and false description and representation, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

81.     The defendants' false representations are willful and reflect the defendants' intent to trade on the good will and brand recognition associated with the Aspen trademark.

82.     The defendants' false representations have damaged Aspen in an amount to be determined at trial.

83.     The defendants' false representations have caused and, unless restrained by this Court, will continue to cause Aspen irreparable injury.

84.     Aspen has no adequate remedy at law for Google's infringement.

## FIFTH CAUSE OF ACTION
### Lanham Act - Trade Name Infringement

85.     Aspen hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 84 above.

86.     Aspen University, Inc. has operated under the trade name of "Aspen University" since 2003.  Aspen is the original owner of the name and no other entity is known to the plaintiff to have ever operated under that name.

87.     With full knowledge of Aspen's rights in the Aspen trade name, Warren National has acted directly and has authorized and engaged Vantage Media to purchase advertising for Warren National using Google's search-based advertising programs. Vantage Media has in fact purchased participation in Google's advertising program utilizing Aspen's trade name.

12

88.    The defendants' use of the Aspen trade name on and in connection with their Internet search-based advertising programs convey the misleading commercial impression to the public that the advertisers listed in the manipulated search results pages, or their products, are approved by, sponsored by or are somehow affiliated or connected with Aspen.

89.    Aspen's reputation and business has been and is now being greatly damaged as a result of the defendants' intended use Aspen's trade name without authorization from the plaintiff and beyond the scope of any permitted fair use or other lawful purpose.

90.    The defendants' unauthorized and willful use of Aspen's trade name in connection with their Internet search-based advertising programs constitutes trade name infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

91.    The defendants' infringement of the Aspen trade name is willful and reflects their intent to trade on the good will and academic standing associated with the Aspen University trade name.

92.    The defendants' infringement has damaged Aspen in an amount to be determined at trial.

93.    The defendants' infringement has caused and, unless restrained by this Court, will continue to cause Aspen irreparable injury.

### SIXTH CAUSE OF ACTION
### Misappropriation of Name and Identity
### (Violation of Common Law Trade Name Rights)

94.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 93 as if fully set forth at length here.

95.    The defendants individually and collectively used Aspen's trade name and identity knowingly and intentionally by placing false titles bearing Aspen's trade name upon Internet search results and upon "Sponsored Links" search results as produced by Google's Internet search engine.

96.    The appropriation of Aspen's name was used in commercial advertising traceable to defendants and was to defendants' commercial advantage because Warren National was able to trade in Aspen's good reputation and institutional accreditation and Vantage Media was able to increase its advertising revenue for its account with Warren National.

13

97.    None of the defendants have any affiliation with Aspen and the misappropriation of Aspen's name and identity was neither authorized by nor done with Aspen's consent.

98.    Aspen was injured as a result of the above-described misappropriation by having customers diverted from Aspen's web site and by damage to Aspen's reputation by the appearance of sponsorship and affiliation with Warren National.

99.    Plaintiff has been immediately and irreparably harmed by the misappropriation of its name and identity and has no adequate remedy at law.

100.    The misappropriation of Aspen's name by the defendants is continuing and these actions cannot be adequately redressed after trial.

## SEVENTH CAUSE OF ACTION
### Libel

101.    Aspen repeats and realleges the allegations contained in Paragraphs 1 through 100 as if fully set forth at length here.

102.    By the dissemination of search results falsely titled with Aspen's name, defendants falsely represented, directly and implicitly, that Aspen University supported or was affiliated with Warren National University and the unaccredited and publicly criticized educational services that were being offered by the Warren National.

103.    Warren National in its own name and by its previous name of Kennedy Western University has been publicly investigated by the United States Senate Committee on Government Affairs for being what is generically or commonly known as a "diploma mill." See United States Government official document, *United States Senate Hearing Report 108-553* (S. Hrg. 108-553), U.S. Government Printing Office, 2004.

104.    Warren National/Kennedy Western University is held in low regard by the online educational community and is described in unflattering terms in publicly posted Internet "chat rooms" discussing online schools.

105.    Defendants knew or reasonably should have known that the false attribution of the search result information including the Internet links provided under the search result title of "Aspen University" would damage Aspen and was done with contempt, malice, ill will, or reckless and gross disregard of Aspen's name, reputation, business, and business good will.

106.    Aspen has sustained damages and is entitled to an award of such damages in an

14

amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### Consumer Fraud
### (Colorado Consumer Protection Act: C.R.S. §6-1-101, et.seq.)

107.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 106 as if fully set forth at length here specially noting Aspen University Inc.'s status as a licensee and citizen of Colorado.

108.    Each and every defendant avails itself of the privilege and opportunity of doing business in Colorado through its Internet advertising and upon information and belief, by defendants Warren National and Vantage Media engaging in telemarketing and other advertising inside the territorial jurisdiction of Colorado and directed towards the solicitation of individual Colorado consumers to become Warren National students.

109.    Defendants' dissemination of false and misleading Internet advertising unlawfully using Aspen's trademark and trade name is a deceptive trade practice as defined by C.R.S. 6-1-105.

110.    Defendants' false and misleading Internet advertising unlawfully using Aspen's trademark and trade name was intended to and did create confusion among Colorado consumers, among others, as to the true source, affiliation, characteristic and quality or standard of Warren National and its educational services including whether Warren National and its educational services were approved by or affiliated with Aspen.

111.    Defendants' conduct in placing the false and misleading Internet advertising unlawfully using Aspen's trademark and trade name was undertaken knowingly, willfully and intentionally.

112.    Aspen has sustained damages as a result of defendants' conduct in an amount to be proved at trial, and are entitled to actual damages, treble damages and its costs in this action plus reasonable attorney's fees as provided in C.R.S. §6-1-113.

## NINTH CAUSE OF ACTION
### Unjust Enrichment

113.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 112 as if fully set forth at length here.

114.    Defendants have derived considerable economic benefit in the form of

increased sales revenues from their conduct of unlawfully engaging in commerce through the unlawful use of Aspen's trademark and trade name.

115.    Aspen is entitled to the disgorgement from each and every defendant of the revenues each received due to or associated with the unlawful use of Aspen's trademark and trade name in amounts to be proved and determined at trial.

## TENTH CAUSE OF ACTION
### Civil Conspiracy under Colorado Law

116.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 115 as if fully set forth at length here.

117.    Warren National, directly and by, through and with its agents, acted in concert to undertake the described Internet advertising effort using Aspen's trademark and trade name.

118.    All defendants knew or should have known of the existence of and Aspen's rights in its federally registered trademark and its business trade name.

119.    Defendants at all times exercised and exclusively maintained joint control over the Internet advertising effort.

120.    The unlawful use of Aspen's trademark and trade name by the defendants did proximately cause damage to Aspen.

121.    Aspen is entitled to recover actual damages in an amount to be proved and determined at trial.

122.    Aspen is entitled to exemplary damages as a result of the defendants' knowing, willful and intentional collective actions in unlawfully using Aspen's trademark and trade name.

### PRAYER FOR RELIEF

WHEREFORE, ASPEN asks for an order and demands judgment jointly and severally against each and every defendant as follows:

A.    Preliminarily and permanently enjoining the defendants and their officers, partners, agents, subcontractors, servants, employees, subsidiaries and related companies or entities, and all others acting in concert or participating with them or with actual notice of such order from:

(1) Directly or indirectly selling or offering for sale the Aspen University, Inc. trademark, the Aspen University trade name or other terms confusingly similar thereto for use in Internet search-based advertising programs;

(2) Directly or indirectly purchasing Internet based advertisements using search terms that are identical or confusingly similar to the Aspen University, Inc. trademark or Aspen University trade name.

(3) Making any use in any manner of the Aspen University, Inc. trademark and/or Aspen University trade name and/or terms confusingly similar thereto unless specifically authorized by Aspen.

B.    Awarding Aspen University, Inc. costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § I117;

C.    Awarding Aspen University, Inc. actual and trebled damages to the full extent allowed under 15 U.S.C. § I117, in an amount to be determined at trial.

D.    Awarding Aspen University, Inc. actual, treble and other exemplary damages as provided for under Colorado law.

E.    Awarding Aspen University, Inc. its costs and attorneys' fees to the full extent provided for by the Colorado Consumer Protection Act under C.R.S. § 6-1-113.

Dated: April 17, 2007              Respectfully Submitted,
                                   Aspen University, Inc.
                                   By Counsel


LAW OFFICE OF JOHN BOND, PLLC



John Bond, Esq., VSB No. 39457
10617 Jones Street, Suite 101
Fairfax, Virginia 22030
(703) 359-7116
Fax: (703) 359-7120
Counsel for Plaintiff Aspen University, Inc.